# 23-0521-cv(L), 23-0522-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

---

MARIAM DAVITASHVILI, individually and on behalf of all others
similarly situated, ADAM BENSIMON, individually and on behalf
of all others similarly situated,

*Plaintiffs-Appellees,*

PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, NATHAN OBEY,

*Consolidated Plaintiffs-Appellees,*

MIA SAPIENZA, MALIK DREWEY,

*Plaintiffs,*

– v. –

GRUBHUB INC., DBA Seamless, POSTMATES INC., UBER
TECHNOLOGIES, INC., in its own right and as parent
of wholly owned subsidiary Uber Eats,

*Defendants-Appellants,*

DOORDASH INC.,

*Defendant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF FOR DEFENDANT-APPELLANT GRUBHUB INC.

---

DAVID J. LENDER
ERIC S. HOCHSTADT
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

ZACHARY D. TRIPP
*Counsel of Record*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

*Attorneys for Defendant-Appellant Grubhub Inc.*

## CORPORATE DISCLOSURE STATEMENT

Grubhub Inc. is a wholly owned subsidiary of Just Eat Takeaway.com N.V., a public company. Just Eat Takeaway.com N.V. has no parent corporation and no publicly held company owns 10% or more of its shares.

# TABLE OF CONTENTS

Introduction .................................................................................. 1

Statement of issues ...................................................................... 4

Statement of the case .................................................................. 5

    A. The Federal Arbitration Act ..................................................... 5

    B. Appellees' use of Grubhub subject to its Terms of Use .............. 6

    C. Grubhub's Terms of Use and their arbitration provision ......... 10

    D. Appellees' suit .................................................................... 12

    E. Procedural history .............................................................. 14

Jurisdiction ................................................................................ 17

Standard of review ..................................................................... 17

Summary of the argument ........................................................... 17

Argument ................................................................................... 23

  I. Appellees agreed to arbitrate because they placed orders with notice that doing so would bind them to Grubhub's Terms of Use and the arbitration clause therein ............................................ 24

    A. Grubhub provided adequate notice to Appellees that placing an order would bind them to the Terms of Use ......................... 25

      1. Grubhub's order interface provided adequate notice .......... 26

      2. Grubhub's 2021 email provided adequate notice ................ 32

    B. Appellees unambiguously manifested their assent to the Terms of Use when they placed orders in 2022 ......................... 35

    C. The district court lacked justification to excuse Appellees from their arbitration agreements ........................................... 37

    D. The district court's ruling is both wrong and damaging ........... 47

  II. Appellees' suit is subject to mandatory arbitration under the Terms of Use ...................................................................... 48

    A. Arbitration is required because this suit relates to Appellees' use of or relationship with Grubhub ......................... 50

       1. Appellees' arbitration agreement broadly mandates arbitration of any dispute that in any way relates to Appellees' use of or relationship with Grubhub................... 50

       2. Appellees' claims in a way relate to their use of or relationship with Grubhub ..................................................... 52

   B. At a minimum, Appellees' suit is subject to mandatory arbitration because this is a dispute with Grubhub ................ 59

       1. Appellees' suit bears a nexus to the Terms of Use .............. 60

       2. Appellees must arbitrate any dispute with Grubhub even if it lacks a nexus to the Terms of Use......................... 61

Conclusion................................................................................................. 67

Certificate of compliance ............................................................................ 68

Certificate of service .................................................................................. 69

# TABLE OF AUTHORITIES

**Cases**             **Page(s)**

*Ali v. Fed. Bureau of Prisons,*
552 U.S. 214 (2008) ................................................................ 50

*Am. Express Co. v. Italian Colors Rest.,*
570 U.S. 228 (2013) ................................................................ 52

*Brad H. v. City of New York,*
951 N.E.2d 743 (N.Y. 2011) .................................................... 63

*Brower v. Gateway 2000, Inc.,*
676 N.Y.S.2d 569 (N.Y. App. Div. 1998) ............... 19, 33, 36, 38

*Conifer Realty LLC v. EnviroTech Servs., Inc.,*
964 N.Y.S.2d 735 (N.Y. App. Div. 2013) ........................ 65, 66

*Donohue v. Cuomo,*
184 N.E.3d 860 (N.Y. 2022) .................................................... 49

*Ellington v. EMI Music, Inc.,*
21 N.E.3d 1000 (N.Y. 2014) .................................................... 49

*Feggestad v. Kerzner Int'l Bahamas Ltd.,*
843 F.3d 915 (11th Cir. 2016) ................................................ 33

*First Options of Chi., Inc. v. Kaplan,*
514 U.S. 938 (1995) ................................................................ 24

*Fteja v. Facebook, Inc.,*
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ...................................... 46

*Genesco, Inc. v. T. Kakiuchi & Co.,*
815 F.2d 840 (2d Cir. 1987) ................................... 4, 51, 56, 57

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991) .................................................................. 52

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,*
552 U.S. 576 (2008) .................................................................. 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
139 S. Ct. 524 (2019) ................................................. 5, 23, 61

*Hill v. Gateway 2000, Inc.,*
105 F.3d 1147 (7th Cir. 1997) ................................................ 38

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002) ................................................................. 65

*Jade Realty LLC v. Citigroup Com. Mortg. Tr. 2005-EMG,*
922 N.Y.S.2d 37 (N.Y. App. Div. 2011) ................................ 64

*KPMG LLP v. Cocchi,*
565 U.S. 18 (2011) ........................................................... 49, 59

*Lamps Plus, Inc. v. Varela,*
139 S. Ct. 1407 (2019)................................................. 5, 49, 59

*In re Am. Express Fin. Advisors Sec. Litig.,*
672 F.3d 113 (2d Cir. 2011) ............................................ 17, 24

*In re Lawrence,*
23 N.E.3d 965 (N.Y. 2014)...................................................... 65

*In re Rotavirus Vaccines Antitrust Litig.,*
30 F.4th 148 (3d Cir. 2022) .................................................... 51

*Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk
Power Corp.,*
67 F.4th 107, 2023 WL 3214508 (2d Cir. 2023) .............. 48, 49

*Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.,*
6 N.Y.S.3d 7 (N.Y. App. Div. 2015) ...................................... 62

*Mey v. DIRECTV, LLC,*
971 F.3d 284 (4th Cir. 2020) .......................................... 61, 62

*Meyer v. Uber Techs., Inc.,*
868 F.3d 66 (2d Cir. 2017)............................................. *passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985)......................................................... 22, 51

*Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd.,*
372 N.E.2d 21 (N.Y. 1977)..................................................... 50

*Mod. Art Servs., LLC v. Fin. Guar. Ins. Co.,*
79 N.Y.S.3d 4 (N.Y. App. Div. 2018) .................................... 63

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ..................................................................... 5

*Nicosia v. Amazon.com, Inc.,*
834 F.3d 220 (2d Cir. 2016)..........................20, 25, 28, 43, 46

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023)................................32, 36, 38, 40

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018)............................................................ 57

*Pitta v. Hotel Ass'n of N.Y.C., Inc.*,
  806 F.2d 419 (2d Cir. 1986).................................................... 61

*ProCD, Inc. v. Zeidenberg*,
  86 F.3d 1447 (7th Cir. 1996) .................................................. 38

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)............................................. *passim*

*Roby v. Corp. of Lloyd's*,
  996 F.2d 1353 (2d Cir. 1993).................................................. 56

*Roller v. Centronics Corp.*,
  No. 87-cv-5715 (JFK), 1989 WL 71200 (S.D.N.Y. June 22,
  1989) ....................................................................................... 41

*Selden v. Airbnb, Inc.*,
  4 F.4th 148 (D.C. Cir. 2021)........................................32, 36, 38

*Selective Ins. Co. of Am. v. County of Rensselaer*,
  47 N.E.3d 458 (N.Y. 2016)..................................................... 64

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
  322 F.3d 115 (2d Cir. 2003)............................................. 24, 63

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ................................................................... 52

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019)...........................1, 19, 25, 26, 32

*Starkey v. G Adventures, Inc.*,
  796 F.3d 193 (2d Cir. 2015)............................................. *passim*

*State v. Philip Morris Inc.*,
  869 N.E.2d 636 (N.Y. 2007)............................................. 22, 50

*Tsadilas v. Providian Nat'l Bank*,
  786 N.Y.S.2d 478 (N.Y. App. Div. 2004) .......................19, 33, 36, 38, 42

*United States v. Am. Express Co.*,
  838 F.3d 179 (2d Cir. 2016).................................................... 57

*United States v. Turkiye Halk Bankasi A.S.*,
16 F.4th 336 (2d Cir. 2021) ................................................ 50

**Statutes and Rules**

28 U.S.C. 1331 .......................................................................... 17

28 U.S.C. 1332(d) ..................................................................... 17

28 U.S.C. 1337(a) ..................................................................... 17

Federal Arbitraiton Act

9 U.S.C. 2 ............................................................................ 5

9 U.S.C. 3 ............................................................................ 5

9 U.S.C. 4 ............................................................................ 6

9 U.S.C. 16(a) ..................................................................... 17

Federal Rules of Evidence

Rule 406 ...................................................................... 39, 41

Rule 602 ........................................................................... 39

Rule 803(6) ....................................................................... 39

**Other Authorities**

*Related*, Black's Law Dictionary (11th ed. 2019) ....................... 50

# INTRODUCTION

Fundamental principles of contract law establish that the parties to this appeal agreed to arbitrate this dispute and that this Court should reverse the denial of Grubhub Inc.'s motion to compel. Grubhub is an online food ordering and delivery marketplace. Like most online platforms, Grubhub offers its services on stated conditions: its Terms of Use. Appellees are Grubhub users who had notice of those terms and thereafter used Grubhub, placed orders, and paid money for meals.

Immediately below the button for placing an order, Grubhub told Appellees, "[b]y placing your order, you agree to Grubhub's terms of use"—with a hyperlink to the Terms of Use. That presentation is materially identical to one this Court upheld as a "model" for providing adequate notice to a platform's terms of use. *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 296-97 (2d Cir. 2019) (discussing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78-80 (2d Cir. 2017)). Grubhub had also emailed Appellees linking to the Terms of Use, specifically informing them that the dispute resolution terms had been updated, and that use of Grubhub would manifest assent. That email alone provided adequate notice under *Starkey v. G Adventures,*

*Inc.*, 796 F.3d 193, 196-98 (2d Cir. 2015). Having been notified of those terms at least twice, Appellees went ahead and placed orders.

Under "standard contract doctrine," Appellees are bound by the Terms of Use: "[W]hen a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). That is precisely what occurred here, and the Terms of Use are therefore binding.

The Terms of Use also require arbitration of Appellees' claims. Appellees agreed to arbitrate "all" disputes that "in any way relate" to their "use of" or "relationship with" Grubhub. JA 143. Appellees' antitrust claims are related to their use of and relationship with Grubhub in multiple ways. Grubhub is a two-sided platform, and Appellees allege that Grubhub is imposing anticompetitive restraints on the other side of the platform (as to restaurants) to avoid improving prices and services for consumers—including Appellees. They seek an injunction that they allege would alter on-platform prices and services charged to customers—including Appellees.

The complaint includes detailed allegations that Grubhub's "sticky" relationships with its customers—including Appellees—give Grubhub market power. And the Terms of Use specifically address the relationship between prices restaurants charge on and off the platform, which lies at the heart of this suit. This dispute thus falls squarely within the broad arbitration clause. Further confirming this dispute's arbitrability, the Terms of Use also mandate arbitration of "any other dispute with Grubhub," *id.*, and this is obviously a "dispute with Grubhub." The parties' contracts thus require arbitration of their claims for multiple reasons.

The district court nonetheless denied the motion to compel, holding that the parties had not entered into a binding contract and that the Terms of Use would not require arbitration of this dispute in any event. Each of those conclusions is wrong as a matter of law.

First, the district court faulted Grubhub for not requiring users "to check a box or take any affirmative action" to agree to the Terms. JA 257. But Grubhub *did* require affirmative action: It required consumers to click to place an order, telling them, "[b]y placing your order, you agree to Grubhub's terms of use." JA 120, 122. And more fundamentally, *Meyer* forecloses a "check box" requirement on materially identical facts.

Second, the district court determined that the claims were unrelated to Appellees' use of or relationship with Grubhub because Appellees seek money damages only for purchases made off the platform. But it is well-settled that such a gambit does not work. "[W]hether a particular claim falls within the scope of the parties' arbitration agreement" depends "on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). Appellees' gerrymandered damages request does not obscure the relationship between their underlying factual allegations and their "use of" and "relationship with" Grubhub. JA 143. In any event, there is no sound basis for refusing to enforce Appellees' promise to arbitrate any "dispute with Grubhub." *Id.* Those words mean what they say. Arbitration therefore is required and this Court should reverse.

## STATEMENT OF ISSUES

1. Whether Appellees agreed to Grubhub's Terms of Use when they placed orders on Grubhub after having received at least two conspicuous notices that placing an order would bind them to the Terms of Use.

2. Whether the Terms of Use require arbitration of Appellees' claims against Grubhub.

## STATEMENT OF THE CASE

### A. The Federal Arbitration Act

"Under the [Federal Arbitration] Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "Congress enacted the FAA to replace judicial indisposition to arbitration with a national policy favoring it and placing arbitration agreements on equal footing with all other contracts." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (cleaned up). Section 2 makes arbitration provisions presumptively "valid, irrevocable, and enforceable," 9 U.S.C. 2, and "the FAA provides [a] default rule … that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019).

The FAA operates "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Section 3 demands that a court "stay the trial of" "any suit or proceeding" that is "brought … upon any issue referable to arbitration under an [arbitration] agreement … until such arbitration has been had." 9 U.S.C. 3. Section 4

allows parties "aggrieved by" another's "failure, neglect, or refusal … to arbitrate under a written [arbitration] agreement" to "petition" a court "for an order directing that such arbitration proceed." 9 U.S.C. 4.

## B. Appellees' Use Of Grubhub Subject To Its Terms Of Use

Grubhub Inc. operates a "two-sided platform[] … connect[ing] restaurants and consumers" looking to fill and place orders for "pickup or delivery." JA 25, 27 (¶¶ 26, 36).[1] Appellees are account-holding users of Grubhub. JA 113 (¶¶ 5-7).[2] Using Grubhub's platform, they each placed orders for pickup or delivery in 2022. JA 115 (¶ 13).

Before placing those orders, Grubhub had notified Appellees at least twice that placement of an order would manifest agreement to Grubhub's Terms of Use. Grubhub has two interfaces: one for mobile devices and one for web-based users. JA 114 (¶ 10). On both, the checkout page told Appellees that, "[b]y placing your order, you agree to Grubhub's terms of use and

---

[1] In 2013, Grubhub merged with Seamless North America LLC. JA 113 (¶ 4). "Grubhub" in this brief refers to both Grubhub and Seamless.

[2] The appellees in Grubhub's appeal are Mariam Davitashvili, Adam Bensimon, Philip Eliades, Jonathan Swaby, John Boisi, and Nathan Obey. Malik Drewey was not a subject of Grubhub's motion to compel. *See* Dist. Ct. ECF No. 73 at 1-3. Mia Sapienza dismissed her claims before Grubhub filed its motion to compel. *See* Dist. Ct. ECF No. 71.

privacy policy (both UPDATED on 12/14/2021)." *Id.*; JA 120, 122. That notice appeared immediately below the order button, in dark text on a light background, with bright hyperlinks to the Terms of Use. *See id.*



Mobile interface. JA 120.



Web interface. JA 122.

In addition, on December 14, 2021, Grubhub had emailed Appellees, telling them that it had updated its Terms of Use and that "**continued use of Grubhub will confirm that you have reviewed and agreed to the updated Terms of Use.**" JA 115 (¶ 12), 154. That email, which Appellees have admitted they "received," JA 217, linked to the Terms of Use and noted updates to Grubhub's "dispute resolution and arbitration agreement." JA 154.



December 14, 2021 Email. JA 154.

After that email, and after being informed at checkout that placing an order would indicate agreement to the Terms of Use, Appellees used Grubhub to place orders. JA 115 (¶ 13).

## C. Grubhub's Terms Of Use And Their Arbitration Provision

The Terms of Use "constitute[] a contract between" users and Grubhub governing "access and use" of Grubhub's platform. JA 124. The Terms provide that, by accessing or using the platform, users "agree to all the terms and conditions of this Agreement." *Id.* "If you do not agree, do not access and/or use" the platform. *Id.*

The Terms include a mandatory arbitration provision and a class action waiver. The third paragraph prominently informs users that the contract "REQUIRE[S] YOU TO RESOLVE DISPUTES WITH GRUBHUB, NO MATTER WHEN ARISING OR ASSERTED, THROUGH BINDING INDIVIDUAL ARBITRATION," and that use of Grubhub is contingent on waiving the ability to participate in a class action. *Id.* The "Dispute Resolution" section later sets forth specifics. The section's "Mutual Arbitration Agreement" states that the parties agree to "submit[] exclusively to binding arbitration":

> all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement or payments by

> or to Grubhub, or that in any way relate to your use of the Platform, the Materials, the Services, and/or other content on the Platform, your relationship with Grubhub, or any other dispute with Grubhub, (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory).

JA 143. The arbitration provision covers "claims that arose, were asserted, or involve facts occurring before the existence of this or any prior Agreement," and "is intended to be broadly interpreted." *Id.* The Terms next provide a class action waiver. JA 144. The Terms provide that certain users can opt out by sending an email, JA 147, and allow users to bring certain claims in small-claims court, JA 143.

The Terms further provide that the prices restaurants display on Grubhub "may differ from the prices offered or published by Merchants for the same menu items" elsewhere, and that prices on Grubhub "may not be the lowest prices at which the menu items are sold." JA 127. The Terms also include a severability clause providing that "if any portion of this Agreement is found to be void, invalid, or otherwise unenforceable, then that portion shall be deemed to be severable and … [t]he remainder of this Agreement shall continue to be enforceable and valid according to the terms contained herein." JA 147.

## D. Appellees' Suit

Appellees filed this putative class action against Grubhub, Uber, and Postmates asserting that each defendant has violated "Section 1 of the Sherman Act and its state analogues." JA 20 (¶ 1). Appellees allege that Grubhub, along with the other defendants, have "exploit[ed], without pro-competitive justification, their dominant position in the market," *id.*, to force restaurants to enter into vertical agreements that have "substantial anticompetitive effects." JA 68-73 (¶¶ 188-216).

According to Appellees, Grubhub wields "market power" because restaurants "must sell through [Grubhub's] platform[]" to access its base of over 22 million users. JA 20-21 (¶¶ 2-3), 47 (¶ 104). The Complaint includes detailed allegations that Grubhub's platform is "sticky," meaning that users "who become familiar with [Grubhub's] platform[] are unlikely to switch to any other service." JA 31 (¶ 51), 48 (¶ 106). Similarly, Appellees assert that the "indirect network effects" associated with Grubhub's relationships with its many customers and restaurants render users "unwilling to switch to [other] platform[s]." JA 34-35 (¶¶ 66-68), 47-48 (¶ 105).

The resultant "market power," the Complaint alleges, enables Grubhub to require participating restaurants to accept a non-discrimination

provision that "prevents the restaurants … from offering lower prices for sales outside [Grubhub's] platform." JA 21 (¶¶ 3-5). The Complaint alleges that Grubhub bans price discrimination to keep customers using its platform, rather than placing orders elsewhere. JA 21 (¶ 6). The Complaint further alleges that the ban on price discrimination harms users by alleviating Grubhub's need to compete for loyalty by offering "better technology or better service" or reducing on-platform prices through "lower Consumer Commission Rates." JA 37 (¶ 74). Appellees make these same allegations vis-à-vis Uber and Postmates.

Appellees seek to represent three classes: all individuals in the United States who (1) purchased delivery or takeout directly from a restaurant that participates with Grubhub, (2) purchased food for dining in a participant restaurant, and (3) purchased food from a participant restaurant through a non-defendant platform. JA 65-66 (¶¶ 173-75). They seek damages and an injunction ordering the defendants not to condition a restaurant's participation on the non-discrimination pricing term. JA 73-74.

### E. Procedural History

1. Grubhub moved to compel arbitration.[3] Grubhub contended that Appellees entered into a valid agreement with Grubhub—*i.e.*, the contract to deliver food at the stated price and governed by the Terms of Use—when Appellees placed orders in 2022 after being prominently notified on Grubhub's interface and in the 2021 email that doing so would demonstrate agreement to those Terms. Grubhub submitted a Declaration from its then Senior Director of Pricing, Thomas J. Koreis, establishing that Appellees were sent that email and placed orders after encountering that message at checkout. *See* JA 113-15 (¶¶ 1-2, 10, 12). Koreis attached screenshots, the dates of each Appellee's orders, and confirmed that none of the Appellees had opted out of the Terms of Use's arbitration provision. JA 114-17 (¶¶ 10, 13, 15), 120, 122, 154. Grubhub argued that the Terms of Use thus require Appellees to arbitrate their claims.

In response, Appellees did not contest that they placed orders on Grubhub in 2022. Nor did Appellees contend that they had encountered a different interface that lacked Grubhub's checkout notice, or otherwise

---

[3] Grubhub also moved to dismiss Appellees' complaint. The district court denied that motion, and that decision is not the subject of this appeal.

submit evidence to rebut the statements in the Koreis Declaration establishing that Appellees had notice of the Terms of Use and that placing orders would bind them. They also admitted they "received the [2021] email." JA 217. Appellees nonetheless claimed that Grubhub had not established that Appellees agreed to the Terms of Use. JA 214-17. Appellees did not dispute that the arbitration provision in the Terms of Use reached their claims against Grubhub. But they contended that those Terms were unenforceable.

2. The district court (Kaplan, J.) denied Grubhub's motion. JA 237-66. First, the court held that Grubhub had not established that Appellees had agreed to the Terms of Use. JA 257-60. The court faulted Grubhub for not "requir[ing] users to check a box or take an[] affirmative action" to indicate assent, beyond placing orders. JA 257. The court also held that Grubhub did not establish that Appellees' checkout pages mirrored the examples Grubhub submitted, notwithstanding the lack of contrary evidence. JA 258. In a footnote, the court stated that Grubhub's web interface was insufficiently conspicuous to supply notice. JA 258 n.85; *see* JA 122.

The district court next concluded that Grubhub's email notice was irrelevant because the Appellees lacked an even earlier notice that they

might receive emails about the Terms of Use. JA 259. The court faulted Grubhub for failing to establish when it sent that email, *id.*, notwithstanding that the Koreis Declaration and exhibits state that Grubhub sent the email on December 14, 2021 and Appellees admitted receiving it. *See* JA 115 (¶ 12), 154, 217.

Second, the district court held that even if Appellees agreed to the Terms of Use, that agreement would not compel arbitration of their claims. JA 262-65. The court determined that Appellees' claims were "unrelated to" their use of Grubhub or the Terms of Use, because Appellees only sought damages for purchases off the Grubhub platform and because a co-plaintiff brought similar claims without using the platform. JA 263.

The district court also recognized that this was a "dispute with Grubhub," covered by the arbitration clause. JA 143; *see* JA 262-64. But the court held that clause was "absurd" and "unconscionable." JA 262-64. In the court's view, "no reasonable person" would expect that the Terms of Use would cover "any … dispute with Grubhub" without a "nexus" to the use of the platform or the Terms of Use's other provisions. JA 263-64.

Grubhub timely appealed. JA 270. Uber also appealed from the same order and the appeals have been consolidated.

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. 1331, 1332(d), and 1337(a). This Court has jurisdiction under 9 U.S.C. 16(a) to review the denial of Grubhub's motion to compel.

## STANDARD OF REVIEW

This Court "review[s] de novo the denial of a motion to compel arbitration." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 72 (2d Cir. 2017). Questions of "whether parties have contractually bound themselves to arbitrate is a legal conclusion also subject to de novo review," while "[t]he factual findings upon which that conclusion is based … are reviewed for clear error." *Id.* at 72-73. On contract formation, because the evidence Grubhub submitted to establish the existence of an agreement was "undisputed," this Court reviews "de novo" the district court's "determinations regarding mutual assent and reasonable notice." *Id.* at 73.

## SUMMARY OF THE ARGUMENT

Appellees and Grubhub "entered into a valid agreement to arbitrate" and Appellees' lawsuit "comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d

Cir. 2011). This Court should therefore reverse the district court's denial of Grubhub's motion to compel.

**I.A-B:** "It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). Under that fundamental principle, Grubhub's Terms of Use are binding.

Appellees agreed to the Terms of Use, including its arbitration clause, because Grubhub offered its service subject to stated conditions (the Terms of Use), at least twice provided "reasonably conspicuous notice of the existence of [those] contract terms," and Appellees provided an "unambiguous manifestation of assent to those terms" when they placed orders on Grubhub. *Meyer*, 868 F.3d at 75. First, Grubhub's checkout page informed Appellees—immediately below the order placement button—that "[b]y placing your order, you agree to Grubhub's terms of use and privacy policy (both UPDATED on 12/14/2021)." JA 114, 120, 122. That message's text, placement, and presentation is materially identical to the message this Court in *Meyer* held provided reasonably conspicuous notice to Uber

customers. *See* 868 F.3d at 71, 78-79. This Court even described the *Meyer* notice as a "model that this Court has found effective." *Starke*, 913 F.3d at 297. The Grubhub interface is therefore sufficient standing alone.

The notice here is even more clearly sufficient because Grubhub also sent each Appellee a short email informing them that Grubhub had updated its Terms of Use and that "continued use of Grubhub w[ould] confirm that you have reviewed and agreed to the updated Terms of Use." JA 115, 154. That email linked to the Terms and specifically noted updates to the dispute-resolution provision. *Id.* Under *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 196-98 (2d Cir. 2015), that email would provide adequate notice—standing alone—that use of the platform qualifies as assent. *See also Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (N.Y. App. Div. 2004); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 571-72 (N.Y. App. Div. 1998). When combined with the *Meyer* notice, the notice is even more clearly adequate here.

**I.C:** The district court had no sound basis to break from those precedents and to effectively invalidate the entire Terms of Use. The court held that Appellees needed to "check a box" or otherwise take "affirmative action" in order to "indicat[e] that they have assented to" the Terms. JA 257.

But this Court (and New York courts) have long rejected a rigid checkbox requirement. *See Register.com*, 356 F.3d at 403; *Meyer*, 868 F.3d at 80. Appellees assented by *placing the order* while on notice (1) of the Terms of Use and (2) that ordering would manifest assent to those Terms. *See id.* Appellees never disputed that they received Grubhub's multiple notices. And, contrary to the district court's conclusion, no features of Grubhub's commonplace interface detracted from the conspicuousness of the notice. *Compare* JA 122, *with Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 241 (2d Cir. 2016).

**I.D:** The district court's contrary approach would be deeply damaging to online platforms, as it would effectively prevent platforms from using a common interface to manifest assent to *any* terms of use, including terms that prevent online harassment or abuse or protect users' privacy. That would cast a pall of uncertainty over countless transactions that were entered into based on interfaces created in light of *Meyer*, and would require platforms to add checkboxes that would impede the user experience without conveying any additional real-world assent. This Court accordingly should follow *Meyer* and hold that the Terms of Use are binding here.

**II.A:** Appellees' claims against Grubhub fall within the scope of the

mandatory arbitration provision in the Terms of Use. Appellees agreed to arbitrate "all" claims or disputes that "in any way relate to" Appellees' "use of" or "relationship with" Grubhub, and agreed that those terms should be "broadly interpreted." JA 143. Appellees' claims relate to their use of and relationship with Grubhub in multiple ways.

First, they allege that Grubhub's market power derives from the use of Grubhub by customers—including Appellees. Second, those allegations of market power are bolstered by assertions of Appellees', and other Grubhub customers', "sticky" and entrenched relationships with Grubhub. Third, Grubhub's alleged purpose in imposing the challenged non-discrimination provisions is to ensure that they, and other Grubhub customers, keep using Grubhub. Fourth, Appellees allege they, and other Grubhub customers, are harmed by the challenged non-discrimination provisions because, absent those provisions, Grubhub would offer them better services and prices to procure their loyalty, *i.e.*, to maintain its relationship with Appellees and other customers as users. Fifth, Appellees seek an injunction prohibiting Grubhub from preventing price discrimination, and, if Appellees allegations are correct, that injunction allegedly will alter the prices and services that they receive on the Grubhub platform. Sixth, the

Terms of Use Appellees agreed to specifically address the relationship between prices restaurants charge on and off the platform, which lies at the heart of this suit.

This dispute therefore "ha[s] a connection with," and thus "relat[es] to," each customer's—including Appellees'—use of and relationship with Grubhub. *State v. Philip Morris Inc.*, 869 N.E.2d 636, 639 (N.Y. 2007); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) (explaining that a dispute "relat[es] to" specified subject matter when it "touch[es]" upon that subject matter). The alleged market power and anticompetitive conduct, and aspects of the requested relief, all relate to Appellees' use of, and relationship with, Grubhub.

**II.B:** This lawsuit's connection with Appellees' use of and relationship with Grubhub should end this appeal in favor of arbitration. But even if this Court discerns no such connection, arbitration would still be required. Appellees additionally agreed to arbitrate "any other dispute with Grubhub," and it is undisputed that this suit is a "dispute with Grubhub." JA 143. Arbitration is therefore required, as a court "must enforce arbitration

contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The district court disregarded the plain language on the ground that Appellees' claims lack a "nexus" to the Terms of Use. JA 263-65. But that was doubly flawed. First, Appellees' claims *do* bear a nexus to the Terms. They relate to users' use of and relationship with Grubhub and center on a topic the Terms expressly address: price discrimination. *See* JA 127. Second, the arbitration provision does not require a nexus. It requires arbitration of any "dispute with Grubhub." JA 143. And enforcing that clear promise here is neither "absurd" nor "unconscionable." JA 263-65. It is sensible for a platform and its customers to prefer to resolve disputes that arise between them through the more efficient means of arbitration. And there is no unconscionability, as Appellees had an easy option to avoid arbitration: Just like their co-plaintiff Drewey, they could have ordered food elsewhere. This Court should reverse.

## ARGUMENT

Appellees' claims are subject to mandatory individual arbitration. "In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate,

and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Am. Express*, 672 F.3d at 128. Both these questions are governed by state contract law. *See Meyer*, 868 F.3d at 74; *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

It is undisputed that New York law governs contract formation and contract interpretation in this case. *See* JA 22-23, 257 n.78, 263-64; JA 142 (New York choice-of-law clause in Terms of Use). Bedrock principles of contract law, as applied by this Circuit and New York courts, compel the conclusion that Appellees and Grubhub "entered into … valid agreement[s] to arbitrate" and that Appellees' current "dispute" with Grubhub "comes within the scope of th[ose] arbitration agreement[s]." *Am. Express*, 672 F.3d at 128.

## I. Appellees Agreed To Arbitrate Because They Placed Orders With Notice That Doing So Would Bind Them To Grubhub's Terms Of Use And The Arbitration Clause Therein

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com*, 356 F.3d at 403. Now, as always, parties form contracts through "[m]utual manifestation of assent, whether by written or

spoken word or by conduct." *Meyer*, 868 F.3d at 74. Crucially, courts have long held that a party may manifest assent without actual notice. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). Rather, a party is "bound by [contract] terms if he is on *inquiry* notice" (or "constructive notice") of those terms "and assents to them through conduct that a reasonable person would understand to constitute assent." *Id.* "[A] contract [is] formed" when (1) an offeror provides "reasonably conspicuous notice of the existence of contract terms" and (2) the offeree provides an "unambiguous manifestation of assent to those terms." *Meyer*, 868 F.3d at 75. This case satisfies both requirements.[4]

## A. Grubhub Provided Adequate Notice To Appellees That Placing An Order Would Bind Them To The Terms Of Use

Grubhub provided Appellees with "reasonably conspicuous notice of the existence of contract terms" that would bind Appellees if they placed orders on Grubhub. *Id.* A purchaser receives adequate notice "[s]o long as

---

[4] This Court's contract formation precedents arise under the laws of different jurisdictions. *See, e.g., Meyer*, 868 F.3d at 74 (California law); *Starke*, 913 F.3d at 288 (New York law); *Nicosia*, 834 F.3d at (Washington law). This Court has made clear that those precedents apply to cases arising under New York law. *Starke*, 913 F.3d at 289-91 & nn.7-8, 293-94 & n.11.

the purchaser's attention is adequately directed to a conspicuous hyper-link that is clearly identified as containing contractual terms to which the customer manifests assent by completing [a] transaction or retaining the product or service." *Starke*, 913 F.3d at 296. Grubhub provided such notice at least twice—once at checkout and once via email. And it is undisputed that Appellees thereafter placed orders. They are therefore bound.

### 1. Grubhub's Order Interface Provided Adequate Notice

The starting point for this Court's analysis is its prior decision in *Meyer*. *Meyer* involved a dispute between Uber and a registered user, and this Court held that the plaintiff agreed to the platform's Terms of Service (including its arbitration clause) when he registered for an account. 868 F.3d at 70. The final page of Uber's mobile registration page required the plaintiff to "enter[] his credit card information" and then "click the button marked 'REGISTER.'" *Id.* at 71. "Below the input fields and buttons on the Payment Screen [was] black text advising users that '[b]y creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY.'" *Id.* That final phrase was a "bright blue and underlined … hyperlink that, when clicked, took the user to a third screen containing a button that, in

turn, when clicked, would then display the current version of both Uber's Terms of Service and Privacy Policy." *Id.*

This Court held that the interface provided "reasonably conspicuous notice" that the Terms of Service would bind users if they registered. The Court first explained that the notice analysis centered on the "the perspective of a reasonably prudent smartphone user," who is presumed to have previously "encountered an app [and] entered into a contract using a smartphone" and "know[s] that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found." *Id.* at 77-78.

The Court then held that Uber had provided adequate notice, highlighting certain features of the interface: The notice was "directly adjacent" to "the mechanism for manifesting assent," *i.e.*, the register button. *Id.* at 78. In addition to "being spatially coupled," the notice was "temporally coupled," as it was provided at the same time as the registration. *Id.* The Court also recognized that, "[a]lthough the sentence is in a small font, the dark print contrasts with the bright white background, and the hyperlinks are in blue and underlined." *Id.* The Court explained that the language, "[b]y creating an Uber account, you agree," was "a clear prompt

directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." *Id.* at 79. The Court contrasted the interface in *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), which lacked spatial coupling of the notice and order button and also included "'between fifteen and twenty-five links,' 'text ... in at least four font sizes and six colors,' and several buttons and advertisements." *Meyer*, 868 F.3d at 78 (quoting *Nicosia*, 834 F.3d at 236-37). Finally, the court observed that, "[o]nce a user clicks through to the Terms of Service" on Uber's interface, "the section heading ('Dispute Resolution') and the sentence waiving the user's right to a jury trial on relevant claims are both bolded." *Id.* at 79. The Court accordingly held that Uber "provided reasonably conspicuous notice of the Terms of Service" and the "arbitration clause within." *Id.*

Grubhub's and *Meyer*'s interface and notice are materially identical:



*Meyer* Interface. No. 16-2750, slip op. at 33 (annotated).    Grubhub Mobile Interface. JA 120 (annotated).

Like the *Meyer* interface, Grubhub required Appellees to review basic information and then "click [a] button" to place their order. *Id.*; *see* JA 114, 120, 122. Immediately "below [those] fields and [order placement] button[] on the" checkout page was "black text advising users," *Meyer*, 868 F.3d at 71, that "[b]y placing your order, you agree to Grubhub's terms of use and privacy policy," JA 120, 122; *accord Meyer*, 868 F.3d at 71. That text is "spatially coupled," as it is "directly adjacent" to "the mechanism for manifesting assent," *i.e.*, the order placement button. *Meyer*, 868 F.3d at 78; *see* JA 120, 122. And it is "temporally coupled"—as it is provided at the same time as the sale. *Meyer*, 868 F.3d at 78; *see* JA 120, 122. If anything, Grubhub provided even clearer notice than in *Meyer*. Grubhub's interface contains one action button (not three), and the notice-communicating text appears even closer to that button than in *Meyer*.

As in *Meyer*, Grubhub's notice's "dark print contrasts with" the light background. *Meyer*, 868 F.3d at 78; *see* JA 120, 122. And the phrases "terms of use" and "privacy policy" are bright "hyperlink[s] that, when clicked, t[ake] the user" directly to Grubhub's Terms of Use or privacy policy. *Meyer*, 868 F.3d at 71, 79; *see* JA 120, 122. That conspicuous appearance, along with the language "[b]y placing your order, you agree" sets

forth "a clear prompt directing users to read the Terms [of Use] and signaling that their acceptance of the benefit of [ordering a meal] would be subject to contractual terms." *Meyer*, 868 F.3d at 79; *see* JA 120, 122.

Grubhub's mobile interface is clean and without distractions. *See* JA 120. And Grubhub's web interface is also clean and organized, consisting of little more than the information necessary to review an order, confirm delivery, and collect payment. *See* JA 122. There is only one action button ("Place your delivery order"), immediately adjacent to the notice. *See id.* A single font is used. *See id.* And the only additional fields are an option to "Donate the Change" from the order to a charity, and a link (visually removed from the order-placement button and notice) enabling users to "Invite friends and order together." *See id.* Finally, "[o]nce a user clicks through to the Terms of [Use]," *Meyer*, 868 F.3d at 79, the third paragraph of that agreement—in all capitals—prominently informs users that the Terms require arbitration of "disputes with Grubhub," and directs users to the "Dispute Resolution" section for more detail. JA 124, 143.

Thus, as in *Meyer*, Grubhub's checkout page provides a "reasonably prudent" user with "reasonably conspicuous notice of the Terms of Service" and the "arbitration clause within." *Meyer*, 868 F.3d at 79.

This Court has even urged that "the clean, uncluttered, and conspicuous labeling of the location and binding nature of the terms in the hyperlinked document can be used as a model that this Court has found effective [in *Meyer*]." *Starke*, 913 F.3d at 297. Other circuits have followed *Meyer* and upheld notices materially identical to Grubhub's. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515-17 (9th Cir. 2023) (addressing, *inter alia*, a website checkout page); Answering Brief for Defendants-Appellants at 6-10, *Oberstein*, *supra* (No. 21-56200), ECF No. 30 (providing pictures of the interface); *Selden v. Airbnb, Inc.*, 4 F.4th 148, 151, 157 (D.C. Cir. 2021). Under *Meyer*, Appellees are therefore bound.

## 2. Grubhub's 2021 Email Provided Adequate Notice

In addition to providing a *Meyer* notice before Appellees placed orders, Grubhub also provided email notice that is independently sufficient under *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 196-98 (2d Cir. 2015), and New York state court precedents. In *Starkey*, the defendant sent three emails to the plaintiff placing her on notice of a forum selection clause in the defendant's Terms and Conditions. Those emails were the only notice the defendant provided. The court determined that the "emails … sufficiently directed [the plaintiff's] attention" to those Terms. *Id.* at 197. The

court observed that the emails included "a capitalized, bolded heading 'TERMS AND CONDITIONS,'" and explicitly or "implicitly" advised her that she could access the Terms "by clicking on [a] hyperlink." *Id.* The court next determined that the underlying agreement "reasonably communicated the forum selection clause" because the agreement's "second paragraph … stated that the document" contained a forum selection clause and that clause itself designated the forum "in clear and unambiguous language—albeit in fine print." *Id.* (cleaned up).

Other federal courts follow *Starkey* to uphold email notice. *See Feggestad v. Kerzner Int'l Bahamas Ltd.*, 843 F.3d 915, 919 (11th Cir. 2016) (holding that an "email … contain[ing] a hyperlink" to an agreement with a forum selection clause "provided sufficient notice of the forum selection clause"). New York courts, too, hold that sending a customer a notice conditioning continued use of a product or service on acceptance of an arbitration clause suffices to create the basis for an agreement. *See, e.g.*, *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (N.Y. App. Div. 2004); *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 569, 572 (N.Y. App. Div. 1998).

So too here. Grubhub's email provided reasonable notice to Appellees that continued use of Grubhub would manifest agreement to the Terms of

Use, including its arbitration provision. The email is short and clear, with five readable and concise paragraphs, akin to bullet points, consisting of one or two sentences each. *See* JA 154. It opens by informing Appellees that Grubhub had "update[d]" its Terms of Use and "encourag[ing]" Appellees "to read through" those Terms. *Id.* The next paragraph included a "bolded heading," *Starkey*, 796 F.3d at 197, reading "Terms of Use," JA 154. That heading was also a "hyperlink … underlin[ed] … in a manner distinctive to hyperlinks." *Starkey*, 796 F.3d at 197; *see* JA 154. The email continued to caution Appellees, in bold and underline, that "continued use of Grubhub will confirm that [they] have reviewed and agreed to the updated Terms of Use." JA 154. The email even went further than those in *Starkey* and highlighted that Grubhub had updated its "dispute resolution and arbitration agreement, which explains how legal disputes are handled." JA 154. Thus, Grubhub's email "sufficiently directed [Appellees'] attention" to the Terms of Use generally and to its arbitration provision in particular. *Starkey*, 796 F.3d at 197.

Next, the underlying agreement "reasonably communicated" the arbitration clause. The Terms of Use's third paragraph—in all capitals, not fine print—informed readers that the Terms required them to arbitrate

disputes with Grubhub, and referred to the Dispute Resolution section, which further describes that compact "in clear and unambiguous language." *Starkey*, 796 F.3d at 197; *see* JA 124, 143.

Accordingly, under *Meyer*, Grubhub's interface provided Appellees adequate notice. And under *Starkey*, Grubhub's 2021 email provided Appellees adequate notice. With both notices together, it follows *a fortiori* that Appellees had adequate notice that placing orders on Grubhub would bind them to the Terms of Use's arbitration provision.

## B. Appellees Unambiguously Manifested Their Assent To The Terms Of Use When They Placed Orders In 2022

"[W]hen a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com*, 356 F.3d at 403. In this case, the "ample evidence" discussed above establishes that "[a] reasonable user" in Appellees' position "would know that by clicking the [order] button, he [or she] was agreeing to the [T]erms [of Use] accessible via the hyperlink" on both Grubhub's checkout page and the 2021 email. *Meyer*, 868 F.3d at 79-80. It is undisputed that Appellees thereafter placed orders

on Grubhub. Accordingly, when they placed orders, Appellees "unambiguously manifested [their] assent" to the Terms of Use. *Id.*; *see also Oberstein*, 60 F.4th at 515-17 (following *Meyer* and holding that a contract is formed under analogous circumstances); *Selden*, 4 F.4th at 156-58 (same).

New York courts have reached the same conclusion with less clear indication of assent. In *Tsadilas*, for example, the Appellate Division held that the plaintiff "consented to" the terms of use of a credit card (including an arbitration agreement) when she used the card after having been mailed a notice (that she "did not read") that her continued use of the cards would manifest assent. 786 N.Y.S.2d at 480. In *Brower*, that same court held that the plaintiff was bound to an arbitration agreement because it chose to "ret[ain] … merchandise beyond the 30 days specified in the Agreement enclosed in the shipment of [the] merchandise." 676 N.Y.S.2d at 571-72. Thus, under New York and Circuit precedent, "the undisputed facts of this case" compel the conclusion that Appellees "unambiguously" agreed to the Terms of Use and its arbitration provision when they used Grubhub's service to place orders in 2022. *Meyer*, 868 F.3d at 80.

## C. The District Court Lacked Justification To Excuse Appellees From Their Arbitration Agreements

The district court had no sound basis to hold that the Terms of Use were not binding.

**1.** The district court first held that the Terms of Use were not binding because Grubhub did not "require users to check a box or take any affirmative action indicating that they have assented to, let alone read, the Grubhub terms of use." JA 257. But Grubhub *did* require affirmative action: It required users to use Grubhub to place orders. And Appellees did just that. That is more than sufficient. *See Meyer*, 868 F.3d at 79-80; *supra,* Section I.B.

This Court has also rejected a "checkbox" requirement, which has no basis in contract law. In *Register.com*, this Court held that where a user of a computer service was on notice of the terms on which a service is offered, there is "no reason why the enforceability of the offeror's terms should depend on whether the [user] states (or clicks), 'I agree,'" or is "offered an icon marked, 'I agree,' on which to click." 356 F.3d at 403. In such a case, "the taking" of the service itself "constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Id. Meyer* then applied *Register* to hold that the plaintiff, having been put on notice, manifested his

assent to a platform's Terms of Service by "clicking the registration button" even though he "did not read the Terms and Conditions" themselves; no checkbox or additional action was required. *Meyer*, 868 F.3d at 79-80.

Other circuits too have found valid agreements in the absence of an additional checkbox. *See Oberstein*, 60 F.4th at 517; *Selden*, 4 F.4th at 151, 157-58. Same for New York courts: In *Tsadilas* and *Brower* the court found a binding arbitration agreement because the plaintiffs, having received notice, continued to use the credit card or failed to return the product. *Tsadilas*, 786 N.Y.S.2d at 480; *Brower*, 676 N.Y.S.2d at 571-72. No additional action was required. *See id.*[5]

**2.** The district court also determined that Grubhub did "not provide[] sufficient evidence concerning what its app or web page looked like at the time the [Appellees] placed their orders." JA 258. But that rationale fails as a matter of law because Grubhub's evidence was uncontroverted.

_____

[5] In *Brower*, the New York court adopted the rationale of Judge Easterbrook's seminal decisions in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) and *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), which established that a seller's terms "bind consumers who use" products "after an opportunity to read the terms and to reject [those terms] by returning the product." *Hill*, 105 F.3d at 1148. *See Brower*, 676 N.Y.S.2d at 571-72. That standard is plainly satisfied here.

Grubhub submitted a declaration from its then Senior Director of Pricing, Thomas Koreis, who stated facts based his "personal knowledge" and "review and knowledge of [Grubhub's] business records and files." JA 113; *see* Fed. R. Evid. 406, 602, 803(6). Koreis declared that "Grubhub requires customers, *including plaintiffs*, to agree to its Terms of Use each time the customer places a pick-up or delivery order." JA 114. He submitted screenshots "depicting *the Grubhub checkout page*," confirming that there was no other checkout page. *Id.* (emphasis added). He explained that, on the checkout page of both interfaces, "[t]he language '[b]y placing your order, you agree to Grubhub's terms of use'" appears "immediately below the checkout button" along with text "indicat[ing] when the Terms of Use were last updated." *Id.* Koreis further explained that Grubhub had changed its Terms of Use in December 2021. *Id.* And he declared that "[e]ach of these plaintiffs" placed orders since the 2021 update, specifying for each Appellee a date in 2022 on which they placed orders. JA 115. Four of the six Appellees had placed orders *the same week* as Koreis's declaration; the remaining two had placed orders within the prior six months. *Id.*

Appellees did not submit any evidence to rebut Koreis' testimony. They did not even claim that their checkout experience was different. *See*

JA 214-16. The unrebutted evidence accordingly establishes that Appellees placed orders while on notice of the updated Terms of Use.

*Meyer* confirms that such evidence is sufficient to establish notice. In *Meyer*, the plaintiff "purport[ed] to challenge the evidentiary foundation for the registration screens," but provided "no basis" for questioning Uber's "declaration" setting forth facts "regarding Meyer's registration for and use of the Uber App, as well as the registration process." *Meyer*, 868 F.3d at 80; *see also id.* at 70 n.1. This Court rejected the gambit and held that the plaintiff indeed had notice.

Notably, the court reached that conclusion even though Meyer submitted a declaration that he "did not read the Terms and Conditions" or "recall seeing or following the hyperlink." *Id.* at 71. Here, the Appellees did not even do that. They did not submit any evidence concerning Grubhub's checkout or email notices at all. The district court thus had no basis to disregard Grubhub's evidence. *See also Oberstein*, 60 F.4th at 417-18 (finding no "material factual dispute" with respect to customers' "constructive notice" where "the authenticity of screenshots [was] not subject to factual dispute" and "there [was] no dispute that the webpages themselves contained the notices[] that … linked to the Terms [of Use] … [that] contained

the arbitration provision"); *Roller v. Centronics Corp.*, No. 87-cv-5715 (JFK), 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989) (holding that the plaintiff could "show[] that [an] arbitration agreement exists … by showing it was a regular practice of defendant to enter into [such] agreements" with individuals in the plaintiff's position (citing Fed. R. Evid. 406)).

The district court relatedly faulted Grubhub for failing to "specify" whether Appellees placed their orders using Grubhub's mobile or website interface. JA 258. But it is irrelevant which interface they used because the checkout page *on both interfaces* provided the same sufficient notice— immediately below the order button—that, by placing an order, a user would agree to the hyperlinked Terms of Use. *See* pp. 7-8, *supra*. And Appellees never asserted that they encountered a different interface.

**3.** The district court committed a similar error in disregarding Grubhub's email notice because Grubhub purportedly did "not submit[] any evidence to demonstrate when this email was sent and whether it was successfully delivered to or opened by any plaintiff." JA 259. Koreis declared that Grubhub sent that email to "each plaintiff" and submitted a "true and correct copy of th[at] email" dated "12/14/21." JA 115, 154. That is enough to establish that Grubhub sent that email on December 14, 2021, and

thereby put Appellees on notice. *See, e.g., Tsadilas*, 786 N.Y.S.2d at 480. And here, Appellees even conceded that they "received the[se] emails." JA 217; *see Starkey*, 796 F.3d at 195-98 (upholding email notice where affidavits established that the defendant "sent" emails to the plaintiff who "d[id] not dispute that she received the relevant emails").

**4.** The district court also determined that Grubhub "failed to demonstrate a course of dealing by which [Appellees] could be and have been on reasonable notice that updates to Grubhub's terms of use would be communicated by email notices." JA 259. But Grubhub did establish a prior course of dealing with Appellees. Per the Koreis declaration, all Appellees had established Grubhub accounts and placed orders on Grubhub before December 14, 2021—orders which were governed by earlier iterations of the Terms of Use. *See* JA 113; *see also* JA 161. Regardless, there is no basis in this Court's precedents or general principles of contract law for imposing a "notice squared" requirement, that a platform first must place users on notice that it might later send an email that would notify them that placing orders would bind them to the company's terms. Contract law instead simply requires reasonable notice that, by accepting the offer, the

user agrees to the stated terms. *See* pp. 24-25, *supra*. And here, Grubhub has doubly satisfied that standard.

**5.** The district court compared Grubhub's web interface with "the Amazon checkout page at issue in *Nicosia*," JA 258 n.85, which this Court held might not have provided sufficient notice, *Nicosia*, 834 F.3d at 236-38. Yet a side-by-side comparison shows that the differences between the two interfaces are stark:



Grubhub Web Interface. JA 122 (annotated).



Amazon Interface. *Nicosia*, No. 15-423, slip op. at 41 (annotated).

The "presentation of terms" on Amazon's page was "not directly adjacent to the 'Place your order' button so as to indicate that a user should construe clicking as acceptance." *Nicosia*, 834 F.3d 236-37. On Grubhub's interface, by contrast, that notice is "directly adjacent" and provides "a clear prompt directing users to read the Terms [of Use] and signaling that their acceptance of the benefit of registration would be subject to [those] contractual terms." *Meyer*, 868 F.3d at 78-79. That difference is dispositive. *See id.* In fact, *Nicosia* contrasted Amazon's interface from an interface that "show[ed], immediately below the 'Sign Up' button, a notice stating, 'By clicking Sign Up, you are indicating that you have read and agree to the Terms and Service.'" 834 F.3d at 237 (citing *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012)). The notice on Grubhub's website checkout page matches that description and the one in *Meyer*.

Grubhub's web interface is also far neater and more streamlined than Amazon's. The *Nicosia* interface included "fifteen [to] twenty-five links on the Order Page, and various text … in at least four font sizes and six colors (blue, yellow, green, red, orange, and black), alongside multiple buttons and [multiple] promotional advertisements." *Id.* at 236-37. In addition to order, delivery, and payment information, the page included "a number of

sentences in faint, black font directing users to links to other Amazon webpages for additional information, such as tax and seller information, customer assistance pages, and product return policies." *Id.* Grubhub's website checkout page, by contrast, has far fewer links, appears almost entirely in black (save for the hyperlinks), and has no promotional advertisements or additional information.

Accordingly, both *Meyer* and *Nicosia* support Grubhub—and Grubhub also provided the email notice that is sufficient under *Starkey*. It thus follows *a fortiori* that the Terms of Use are binding here.

## D. The District Court's Ruling Is Both Wrong And Damaging

The district court's contrary decision to invalidate the Terms of Use is not merely wrong, but also deeply damaging. The district court's ruling sharply undercuts predictability for platforms, especially those that have structured their interfaces in light of *Meyer*. Numerous platforms have interfaces that are similar to Grubhub's. Yet under the district court's approach, those platforms nonetheless could be prevented from enforcing *any* of their terms of use. Restrictions on harassing content, identity theft, data scraping, and fraudulent practices, and provisions on user privacy, choice of forum, choice of law, limitations of liability, just to name a few,

would all be unenforceable. The district court's approach thus sharply undermines predictability for businesses that have structured their affairs in reliance on settled law.

The district court's approach also would effectively require platforms to force users to check an extra box in order to manifest assent to the terms of use. But such a check-box requirement would not convey any more assent than clicking "place order" in the first place. This Court should instead follow its prior precedents and settled principles of contract law to hold that the Terms of Use are binding here.

## II. Appellees' Suit Is Subject To Mandatory Arbitration Under The Terms Of Use

In deciding "whether parties have agreed to submit a particular dispute to arbitration," this Court "determin[es] whether, under ordinary principles of contract interpretation, [the] particular dispute is covered by the language to which the parties agreed." *Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 2023 WL 3214508, at *3-4 (2d Cir. 2023). Under New York law, "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent, and the best evidence of what parties to a written agreement intend is what they say in their writing."

*Donohue v. Cuomo*, 184 N.E.3d 860, 866 (N.Y. 2022) (cleaned up). "[I]n all cases involving contract interpretation," "[t]he words and phrases used by the parties must … be given their plain meaning" and enforced accordingly. *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003-05 (N.Y. 2014).

The FAA's "emphatic federal policy" favoring arbitration, *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011), requires that, by default, "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019). Therefore, where an arbitration agreement's "scope is … ambiguous as to the parties' dispute … the presumption of arbitrability" applies. *Niagara Mohawk*, 2023 WL 3214508, at *7.

The Terms of Use mandate arbitration of Appellees' claims for two independent reasons: First, the Terms require arbitration of any dispute that "in any way relate[s]" to their "use of" or "relationship with" Grubhub. JA 143. Appellees' suit fits the bill. Second, the Terms require arbitration of any dispute that relates to any "dispute with Grubhub." *Id.* And it is undisputed that this suit is a dispute with Grubhub. To the extent the court discerns any "ambiguit[y]" on either score, that ambiguity "must be resolved in favor of arbitration." *Lamps Plus*, 139 S. Ct. at 1418.

## A. Arbitration Is Required Because This Suit Relates To Appellees' Use Of Or Relationship With Grubhub

### 1. Appellees' Arbitration Agreement Broadly Mandates Arbitration Of Any Dispute That In Any Way Relates To Appellees' Use Of Or Relationship With Grubhub

Appellees agreed to arbitrate "all claims, disputes, or disagreements … that in any way relate to" Appellees' "use of" or "relationship with" Grubhub. JA 143. That language is "broad." *E.g.*, *Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd.*, 372 N.E.2d 21, 22 (N.Y. 1977). "'[A]ll' means 'all'." *United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336, 347 (2d Cir. 2021), *vacated in part on other grounds*, 143 S. Ct. 940 (2023). "'[A]ny' mean[s] 'any,'" *id.* at 348 n.48—"that is, 'one or some indiscriminately of whatever kind,'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (citation omitted). The phrase "relate to" includes any dispute that is "[c]onnected in some way" to the Appellees' use of or relationship with Grubhub. *Related*, Black's Law Dictionary (11th ed. 2019).

In other words, "[b]y using the expansive words 'any' and 'relating to'" (and "all," for good measure), the arbitration provision "makes explicit that all claims that have a connection with" Appellees' use of or relationship with Grubhub "are arbitrable." *State v. Philip Morris Inc.*, 869 N.E.2d 636,

639 (N.Y. 2007); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985) (all claims that "touch matters covered by" the specified subject matter).[6] Moreover, the Terms of Use state that the arbitration provision is "to be broadly interpreted." JA 143. The Terms therefore "broadly" mandate arbitration of all disputes that are in any way connected with, or in any way touch upon, Appellees' use of or relationship with Grubhub.

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement," courts look at "the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987). So long as "the allegations underlying [Appellees'] claims 'touch matters' covered by the parties' [] agreements," "then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* at 846 (quoting *Mitsubishi Motors*, 473 U.S. at 624 n.13)).

The clause also reaches claims "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory." *Id.* And it is well-

---

[6] Other courts have described similar clauses as using the "broadest conceivable language" and as having an "unlimited" scope. *In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148, 158-59 (3d Cir. 2022).

settled that "statutory claims," including antitrust claims, "may be the subject of an arbitration agreement." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233-34 (2013); *see also Southland Corp. v. Keating*, 465 U.S. 1, 10-16 (1984) (holding that the FAA preempts state law that bars arbitration of claims under state statutes).

### 2. Appellees' Claims In A Way Relate To Their Use Of Or Relationship With Grubhub

a.    Appellees' dispute with Grubhub is subject to mandatory arbitration because it is connected to and touches upon their use of or relationship with Grubhub. Grubhub operates a two-sided platform that connects users with restaurants. JA 27. Thus, as Appellees' admit, "the value that [Grubhub] offer[s] to one side of the platform is a function of the extent of the use of the other side of the platform." JA 34. And here, Appellees' allegations make clear that this lawsuit, which targets Grubhub's pricing-related contractual relationships on the restaurant side of its platform, "relates to" Appellees' use of and relationship with Grubhub on the other, consumer side of the platform in at least six different ways.

***First***, Appellees' allegation of Grubhub's market power, which it has purportedly abused, arises from the use of Grubhub by customers, including Appellees. Appellees' allege that, on one side of its platform, Grubhub has amassed a user base of "tens of millions of active users," to whom restaurants must sell meals in order to "cover their costs," and that Grubhub enjoys significant "market power" on the other, restaurant side of its platform as a result. JA 20-21. Appellees are themselves customers who are part of Grubhub's user base and thus necessarily contribute to the customer use-based "market power" that Grubhub has allegedly "exploit[ed], without procompetitive justification" to impose the challenged non-discrimination provisions. *Id.*

***Second***, the Complaint's assertion of market power further relies on specific allegations about the relationship between Grubhub and its users: The Complaint emphasizes that the relationship is "stick[y]," meaning that users "who become familiar with [Grubhub's] platform[] are unlikely to switch to any other service," such as "a competing Restaurant Platform or a restaurant['s own] website or mobile app." JA 31, 48. It also asserts that the "indirect network effects" associated with the large number of restaurants that participate with Grubhub may render users "unwilling to

switch to [other] platform[s]." JA 34-35, 47-48. Thus the nature of Appellees' and other Grubhub customers' relationship with Grubhub allegedly increases the potency of the market power Grubhub has purportedly abused.

***Third***, Appellees' allege that the entire purpose of the challenged conduct is to maintain Grubhub's relationship with its customers and ensure they keep using the platform. As Appellees put it, Grubhub prohibits price discrimination "because if the restaurants were to offer consumers lower prices for sales outside [the] platform … sales on the platform would decrease." JA 21. Appellees' and other Grubhub customers' use of and relationship with Grubhub, then, is both the alleged source and target of the purported anticompetitive conduct at the center of this litigation.

***Fourth***, Appellees allege that the challenged non-discrimination provisions harm Grubhub customers' experience on the platform. Specifically, they claim that, by guaranteeing no price discrimination, Grubhub keeps its customers on its platform without offering them the "better technology or better service" or "lower Consumer Commission Rates" that a competitive market would otherwise require Grubhub to provide. JA 37; *see also* JA 70 (alleging that the non-discrimination provisions cause "substantial

anticompetitive effects in the Restaurant Platform Market"). So, in addition to being the source and target of the challenged anticompetitive conduct, Appellees' and other Grubhub customers' use of and relationship with Grubhub is also allegedly damaged by that conduct.

*Fifth*, Appellees' lawsuit seeks to alter the nature of Grubhub customers' use of and relationship with Grubhub. Appellees request an injunction limiting Grubhub's ability to guarantee no price discrimination to its customers, including Appellees. *See* JA 74. If Appellees' other allegations are correct, moreover, that injunction will force Grubhub to offer Appellees lower prices and/or better service to keep them using the platform.

*Sixth*, the Terms of Use, which govern Appellees' use of and relationship with Grubhub, address the issue that lies at the heart of this suit: on/off-platform price discrimination. The Terms of Use require customers to agree that they "understand that the prices for menu items displayed through [Grubhub's] Services may differ from the prices offered" elsewhere. JA 127. Appellees' lawsuit is the flipside of the same coin, alleging that prices do not differ on Grubhub and elsewhere. In fact, by requiring that users understand that prices on Grubhub "*may* differ" from prices offered elsewhere, the Terms of Use necessarily contemplate that those

prices may *not* differ from off-platform prices—precisely Appellees' allegation of anticompetitive conduct.

"[T]he allegations underlying [Appellees'] claims touch" upon, *Genesco*, 815 F.2d at 846, and thus are connected with their use of or relationship with Grubhub in several ways: They are allegedly harmed in their capacity as users and customers. Their use of and relationships with Grubhub are allegedly part of what gives Grubhub market power. They seek relief that would allegedly improve the prices and service they receive as customers. And the Terms of Use they agreed to address the relationship between prices charged on and off the platform. This dispute thus is not unrelated in all ways to Appellees' relationship with Grubhub.

b.    The district court's contrary reasoning lacks merit. First, the district court stated that Appellees' "claims specifically exclude any purchases made through defendants' platforms and are based solely on purchases made directly from restaurants or from non-defendant meal-delivery platforms." JA 263. But Plaintiffs cannot plead around the relationship. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("We refuse to allow a party's solemn promise [to arbitrate] be defeated by artful pleading."). What matters is not the legal theories Appellees invoke, but

whether the "factual allegations … underlying [their] claims" have a connection with their use of or relationship with Grubhub. *Genesco*, 815 F.2d at 846. And as set forth above, they do.

The district court's premise is incorrect as well. Appellees' legal claims—even though gerrymandered—still relate to their use of or relationship with Grubhub. Appellees must demonstrate, *inter alia*, that they and other Grubhub users together provide Grubhub with market power. Without the use of the platform by Appellees and other users (and without those "sticky" customer relationships), Grubhub would lack that power. And because Grubhub operates a two-sided platform whose business practices vis-à-vis restaurants necessarily impact the consumer experience on the platform's other side, *see, e.g.*, JA 34-35, Appellees' legal claims necessarily turn, in part, on the "benefits" Grubhub users enjoy or forgo because of the challenged provisions. *United States v. Am. Express Co.*, 838 F.3d 179, 200-06 (2d Cir. 2016), *aff'd sub nom. Ohio v. Am. Express Co*, 138 S. Ct. 2274 (2018); *see also Am. Express*, 138 S. Ct. at 2288-89 (explaining that American Express' "robust rewards program" that is maintained, in part, by American Express' "higher merchant fees" and "antisteering pro-

visions" undermines the assertion those antisteering provisions are anti-competitive); JA 37 (alleging that the non-discrimination provisions cause Grubhub users to forgo various benefits and pay higher prices).

Second, the district court emphasized that Appellees' co-plaintiff, Malik Drewey, "has well-plead claims despite never having used any of the defendants' platforms." JA 263. But that, at most, demonstrates that Appellees' use of Grubhub is not a condition precedent to their ability to maintain this lawsuit; a person who is a customer of a participating restaurant could bring similar claims without themselves using Grubhub. Appellees' arbitration agreement, however, does not require that tight of a bond. It reaches more broadly to "all" disputes that "*in any way relate to*" their use of or relationship with Grubhub. JA 143 (emphasis added). And Appellees' claims (and Drewey's claims) "in a[] way relate to" Appellees' use of and relationship with Grubhub for all the reasons just described. *Id.*

Appellees thus cannot bootstrap Drewey's non-arbitrable claims to evade their own binding commitment to arbitrate this dispute. Drewey is not required to arbitrate because, unlike Appellees, he never placed an order on Grubhub and never agreed to arbitrate claims "that in any way relate to" Appellees' "use of" or "relationship with" Grubhub. JA 143. But

Appellees did. The district court therefore erred in denying Grubhub's motion to compel arbitration of Appellees' claims.

Moreover, even if the Court discerns some "ambiguit[y] about the scope of [the] arbitration agreement," that doubt "must be resolved in favor of arbitration." *Lamps Plus*, 139 S. Ct. at 1418. That approach honors the FAA's "emphatic federal policy" favoring arbitration, *KPMG*, 565 U.S. at 21, as well as the parties' agreement that their arbitration compacts "be broadly interpreted," JA 143.

## B. At A Minimum, Appellees' Suit Is Subject To Mandatory Arbitration Because This Is A Dispute With Grubhub

In light of the relationship between Appellees' suit and their use of and relationship with Grubhub, arbitration is required and there is no need for this Court to address any other portion of arbitration clause. But if this Court does so, it should still reverse. Appellees' agreements with Grubhub require that Appellees individually arbitrate "all claims, disputes, or disagreements … that in any way relate to … any other dispute with Grubhub" not already covered by the arbitration clause, "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory." JA 143. And it is undisputed that this lawsuit is a "dispute with Grubhub." *See* JA 264. Arbitration is therefore required.

Still, the district court refused to compel arbitration. It held that, "as a matter of either contract formation or unconscionability," Appellees' agreement to arbitrate any dispute with Grubhub "do[es] not apply to [Appellees'] claims" because those claims "lack any nexus to the underlying contracts." JA 265. That holding was wrong on multiple levels.

### 1. Appellees' Suit Bears A Nexus To The Terms Of Use

For starters, Appellees' claims have a "nexus" to the Terms of Use. JA 265. That agreement "governs" each Appellee's "access and use of" Grubhub, JA 124, and as explained at length above, *supra* Section II.A.2, Appellees' claims are related to that use. Indeed, Appellees' lawsuit and the Terms of Use both address the central issue in this case: price discrimination. *See* JA 127. Appellees' theories of antitrust harm also touch on the commissions and delivery fees Grubhub charges customers, another topic the Terms of Use cover. *See id.*; JA 28-29, 37.

In light of the nexus addressed above, and the severability clause in the Terms of Use, *see* JA 147, there is no need to address any further question about the validity of the clause in the absence of a nexus: the clause would remain valid when there is a nexus, as here.

## 2. Appellees Must Arbitrate Any Dispute With Grubhub Even If It Lacks A Nexus To The Terms Of Use

In any event, the district court was wrong to require a nexus. Under the Federal Arbitration Act, so long as an arbitration provision addresses disputes concerning a contract or transaction involving maritime or interstate commerce, "courts must enforce [that] arbitration contract[] according to [its] terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Here, the Terms' arbitration provision unambiguously addresses disputes that concern each Appellees' use of Grubhub and the Terms of Use, which Appellees do not dispute involve interstate commerce. The district court, therefore, was required to enforce that provision "according to [its] terms." *Id.* And those terms do not impose the district court's nexus requirement. Rather, the arbitration provision requires Appellees to arbitrate "any other dispute with Grubhub." JA 143.

Indeed, this Court has held that parties must arbitrate disputes that "fall within the … class of arbitrable complaints specified" in an agreement even if the dispute is "wholly distinct" from that agreement. *Pitta v. Hotel Ass'n of N.Y.C., Inc.*, 806 F.2d 419, 423 (2d Cir. 1986). And in *Mey v. DIRECTV, LLC*, the Fourth Circuit stated that an agreement requiring arbitration of "all disputes and claims between" a customer and a service

provider is not "limited to disputes or claims arising out of or relating to the underlying contract or the provision of [the] service" and compelled arbitration of claims alleged to be insufficiently related to the underlying contract and service. 971 F.3d 284, 292-94 (4th Cir. 2020).[7] Contrary to the district court's view, New York law—either on its own accord or as applied via the FAA—requires the same result here.

a.   The district court held that, under New York law, Appellees could not have formed a contract to arbitrate disputes unrelated to their use of Grubhub because concluding otherwise would produce an "absurdity." JA 264. But absurdity is a rule of contract *interpretation*, not formation. *See, e.g.*, *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 6 N.Y.S.3d 7, 11 (N.Y. App. Div. 2015) ("[A] contract should not be interpreted to produce an absurd result."). New York's cardinal rule for contract interpretation is that "[a] written agreement that is clear, complete and subject to only one

---

[7] The *Mey* court also looked to other aspects of the arbitration clause to confirm its broad reading—including that the clause additionally discussed the arbitrability of claims "relating to any aspect of the relationship between" the parties and stated "that the parties intended it 'to be broadly interpreted.'" *Id.* at 294. The Terms of Use's arbitration provision has materially identical language. *See* JA 143.

reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011) Therefore, a court may not invoke a perceived absurdity to reach "an interpretation of [contract] that is not in accordance with its unambiguous language." *Mod. Art Servs., LLC v. Fin. Guar. Ins. Co.*, 79 N.Y.S.3d 4, 6 (N.Y. App. Div. 2018); *see also Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003) (providing that "in following … principles" of contract interpretation under New York law, a court is "not free to alter the plain terms of an agreement or to strain language beyond its reasonable and ordinary meaning").

The Terms of Use are unambiguous in their coverage of "any other dispute with Grubhub." JA 143. And the context drives the point home. The "any other dispute" clause appears after a list of other arbitrable claims, including disputes that "arise out of the interpretation or performance of this Agreement" or "that in any way relate to" to a user's "use of" Grubhub or "relationship with" Grubhub. JA 143. After that list, the clause adds that users must arbitrate "any other dispute with Grubhub," *id.*, and thus plainly operates as a catchall to encompass all disputes between Grubhub and its customers. Thus, because the parties' agreement

"on its face is reasonably susceptible of only one meaning, [the district] court [was] not free to alter the contract to reflect [any] personal notions of" absurdity. *Selective Ins. Co. of Am. v. County of Rensselaer*, 47 N.E.3d 458, 461 (N.Y. 2016). And that result is sensible, not absurd: Grubhub wants to arbitrate with its customers, not litigate with them, because arbitration is a more efficient way of resolving disputes with customers.

The district court expressed skepticism of this portion of the arbitration provision, as a purported "example[] of a relatively new and untested species of arbitration clause" it deemed an "infinite" arbitration clause. JA 262. But the claims here fit within the defined scope of the "related to" clause, and "[t]he fact that contractual terms are 'novel or unconventional' does not bring them or the contract in question to the level of absurdity." *Jade Realty LLC v. Citigroup Com. Mortg. Tr. 2005-EMG*, 922 N.Y.S.2d 37, 39 (N.Y. App. Div. 2011). Here, the contract language is clear, understandable, and sensible: Grubhub wants to arbitrate disputes with its customers, not litigate with them.

b.   The district court similarly erred in holding that the "any other dispute" clause was unconscionable. The district court's appeal to generic "expectations" and free-floating notions of "unreasonable[ness]," JA 265,

does not support a finding of unconscionability. Rather, unconscionability turns on the "absence of meaningful choice on the part of one of the parties … *together with* contract terms which are unreasonably favorable to the other party." *In re Lawrence*, 23 N.E.3d 965, 976 (N.Y. 2014) (emphasis added). Neither circumstance is present here. Appellees had a "meaningful choice": They could have declined to place an order. *Id.* Like their co-plaintiff Drewey, who has never used Grubhub, Appellees could have purchased their food directly from a restaurant or a supermarket.

Requiring arbitration of all disputes between Appellees and Grubhub also does not "unreasonably *favor[]*" Grubhub. *Id.* (emphasis added). Whether in court or in arbitration, Appellees can expect to "secure a fair and expeditious resolution of the underlying controversy." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002).

Indeed, the Appellate Division has rejected a claim of unconscionability with respect to a materially identical arbitration clause. *See Conifer Realty LLC v. EnviroTech Servs., Inc.*, 964 N.Y.S.2d 735, 737-40 (N.Y. App. Div. 2013). That case involved a dispute between Conifer Realty, which owned an apartment complex, and a company Conifer hired to remediate

"extensive flood damage" at the apartment complex. *Id.* at 737. The parties' contract required "that *all matters in dispute between them*, included [sic] *but not limited to* any controversy or claim … arising out of or relating to this agreement or to the identified property … shall be settled exclusively by arbitration." *Id.* at 738 (emphasis added). When Conifer attempted to invalidate that clause on unconscionability grounds, the court rejected the effort, holding that "neither element" of unconscionability was present. *Id.* at 739. The court first explained that nothing about that arbitration agreement "suggests that the terms [were] *unreasonably* favorable to" the respondent. *Id.* (emphasis in original). Second, the court held that nothing in the record indicated that the petitioner "lacked a meaningful choice in retaining [the respondent's] services." *Id.* at 739-40. "Simply put," the claim of unconscionability failed because "the record does not support a finding that [respondent] had petitioner over a barrel with respect to the execution of the contracts at issue." *Id.* at 740. So too here.

Quite simply, the plain language of Grubhub's commonplace interface, 2021 email, and Terms of Use resolve this case. Grubhub notified its users that, by placing an order, they would agree to those Terms. The Terms include an arbitration clause that covers users' claims relating to

their use of or relationship with Grubhub, as well as any other dispute with Grubhub. Appellees had notice, placed orders, and this dispute fits within the plain language of that broad arbitration clause. Arbitration is therefore required.

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand with instructions to grant Grubhub's motion to compel arbitration.

Respectfully submitted,

*/s/ Zachary D. Tripp*

Zachary D. Tripp
   *Counsel of Record*
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

David J. Lender
Eric S. Hochstadt
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

May 26, 2023

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 12,490 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

/s/ Zachary D. Tripp
Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

May 26, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ Zachary D. Tripp
Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000
zack.tripp@weil.com

May 26, 2023